DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JOSE APOLINAR OLIVERA (CABN 279741)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3924
    FAX: (510) 637-3724
    Email: jose.olivera@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RAKESH DHINGRA,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 01-40144-SBA-1<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO AMENDED PETITION FOR WRIT OF ERROR CORAM NOBIS<br><br>Hearing: June 12, 2019<br>Time: 10:00 a.m.<br>Judge: Saundra Brown Armstrong |

In his petition for a writ of error coram nobis, Rakesh Dhingra ("Dhingra") claims that his 2002 conviction in the above-captioned case is an "error of fundamental character." Without credible supporting evidence, he claims he was framed or entrapped by the FBI, and that his minor victim was not, in fact, a minor. These allegations are not only unsupported and outrageous, they are contradicted by the evidence presented at trial and are the very arguments he raised in his first petition for writ of error coram nobis, which the Court rejected. Accordingly, this Petition should be denied.

//

//

//

# I. STATEMENT OF THE CASE

A. Procedural History

On August 30, 2001, Dhingra was charged by indictment with one count of using the internet to solicit sexual activity from a minor, in violation of 18 U.S.C. § 2422(b). (Dkt. No. 1.) Section 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C.A. § 2422(b).

On September 20, 2002, a jury convicted Dhingra of that offense, and on December 17, 2002, the Court imposed a sentence of 24 months in custody and three (3) years of supervised release. (Dkt. Nos. 72 & 84.) Dhingra appealed his conviction to the Ninth Circuit, which affirmed the Court's verdict and sentence in a published decision. *See United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004).

In July 2016, Dhingra filed civil action, *Rakesh Dhingra v. United States*, No. 16-cv-03803-SBA. (*See* Exhibit 1.) In the complaint for that case, Dhingra included a Petition for Writ of Error Coram Nobis. (*Id.*) In that filing, he claimed, as he does here, that the FBI and his minor victim, who he claims was an FBI agent or informer, "persuaded and coerced" him to meet his minor victim. (*Id.* at p. 3, lines 5-14.) He also asserted that his minor victim was an adult when he met her on July 10, 2000, and when he engaged in sexual activity with her. (*Id.*) On September 17, 2016, the Court issued an order stating that a writ of error coram nobis is an extraordinary remedy and that Dhingra's petition failed to provide a valid reason for the 14 year delay in attacking his conviction and did not sufficiently demonstrate that he was diligent in pursuing his claims that the minor was an adult or an FBI agent. (Exhibit 2, Court Order.) The Court further noted that Dhingra's petition was "devoid of any facts supporting his assertion that the minor victim of his criminal offense was actually" an FBI agent/informer. (*Id.*) The Court denied his petition, without prejudice. (*Id.*)

In the above-captioned case, Dhingra again filed a Petition for writ of error coram nobis. On April 9, 2019, the Court ordered Dhingra to file an amended petition and set a revised briefing schedule. (Dkt. No. 152.) On April 26, 2019, Dhingra filed an amended petition seeking an order invalidating his conviction under 18 U.S.C. § 2422(b) and restoring his rights, among other relief.

B. Facts[1]

"In early July 2000, Rakesh Dhingra contacted the victim, then a 14–year–old girl, using the Internet-based America Online Instant Messenger service ("IM")." (*Dhingra*, 371 F.3d at 559.) "Dhingra sent his victim an instant message after seeing her personal homepage, in which she referenced her age and a sexual experience she had during her freshman year of high school, the prior academic year." (*Id*.) At trial, Dhingra's "victim recalled that, in their first conversation, the two discussed their ages and locations." (*Dhingra*, 371 F.3d at 559.) Specifically, the jury was presented with evidence that the victim told Dhingra over IM chats: "I will only be 15," to which Dhingra responds "Age is only a number. We can be good friends. You go to LMC." (Exhibit 3, Excerpts of Trial Transcript, p. 353, line 18-20.) Moreover, in the IM chat, Dhingra asked the victim for details about her past sexual activities, including asking: "u hand jobbed him?"; "put in mouth?"; "but he fingered you?"; "did he insert inside you?" (*Dhingra*, 371 F.3d at 559; Exhibit 3, p. 351, lines 13-18.)

Dhingra then attempted to arrange a meeting with the victim in the evening. (*Dhingra*, 371 F.3d at 559.) "Dhingra represented to the victim that he was 27 years of age, and later attempted to downplay their age difference, stating, 'I look 23.'" (*Id*.) During an interview of Dhingra by law enforcement, he admitted that the victim told him she was around 15 years old. (Exhibit 4, Excerpts of Trial Transcript, p. 407, line 4.)

"Over the next four days, Dhingra and the victim engaged in extensive IM conversations revolving around sexual topics." (*Dhingra*, 371 F.3d at 559.) "During these exchanges, Dhingra

---

[1] The facts in this section are from *United States v. Dhingra*, 371 F.3d 557, 559–60 (9th Cir. 2004), as amended on denial of reh'g (July 23, 2004) and excerpts from the transcripts of Dhingra's trial in his above-captioned criminal case.

repeatedly urged the girl to sneak away to meet him or allow him to visit at her parents' house." (*Id*.) "In an effort to gain her trust, Dhingra assured he wanted 'hugs and kisses' and 'No sex here. At least not on the first 3 meetings.'" (*Id*. at 359-60.) Also, "Dhingra asked the girl if she would perform oral sex on him, saying that he had changed his mind about limiting their physical contact and remarking that the victim "seem[ed] willing and flexible." (*Dhingra*, 371 F.3d at 360.) Dhingra's sexual advances and inducements were made knowing she was a minor. For example, after the victim expressed concern about being kidnapped, Dhingra wrote that he "should be more afraid than you ... cause you are a teen." (*Id*.) Dhingra and the victim discussed various sexual acts they planned to perform on each other when they met in person. (*Id*.)

Dhingra and the victim arranged a meeting at a community college. (*Id*.) Dhingra and the victim met on July 10, 2000, at a community college. (*Id*.; Exhibit 4, p. 404, lines 15-20.) During their encounter, "Dhingra fondled the victim beneath her clothing and later placed her hand on his penis." (*Dhingra*, 371 F.3d at 660.) "The two then proceeded into his automobile, where they further engaged in sexual activity. After the incident, the girl sought help from a friend and one of her teachers, who subsequently informed law enforcement officials of the events." (*Id*.)

Tom Sharp, a detective for Contra Costa Community College District, testified that he responded to a call regarding a sexual assault or incident on July 11, 2000, which was after the sexual activity between Dhingra and the victim. (Exhibit 3, p. 329, lines 10-25.) Subsequently, using the victim's IM, Detective Sharp arrested Dhingra. (Exhibit 3, 328, line 13 – 330, line 17.) Sharp then contacted the FBI. (Exhibit 3, p. 334, 20-21.)

On July 14, 2000, Detective Sharpe contacted the FBI, including Agent Charles Esposito ("Agent Esposito"), to further investigate the offense. (Exhibit 3, p. 339, 4-9.) Esposito met with Detective Sharpe regarding Dhingra's sexual activity with a minor on July 20, 2000. (Exhibit 3, p. 339, lines 4-9.) During his testimony, FBI Agent Esposito provided background about his knowledge of computers and computer crimes, including stating that "In 1995, I became a Crimes-Against-Children Detective Specializing in investigation of physical and sexual abuse and child sexual exploitation. Also, in 1995, I began investigating the use of internet for child sexual exploitation." (Exhibit 3, p. 337, lines 5-10.) Agent Esposito specifically stated on July 14, 2000, "Detective

Sharpe called me and he said – told me about the investigation. Told me about the arrest. Sought advice on wording for the search warrants and such." (Exhibit 4., p. 463, line 14-22.) At trial the victim testified she was "14" in July 2000. (p.465, lines 19-21.)

On September 20, 2002, a jury convicted, and on December 17, 2002, the Court imposed a sentence of 24 months in custody and three (3) years of supervised release. (Dkt. Nos. 72 & 84.)

### 3. Appeal

On appeal, Dhingra challenged 18 U.S.C. § 2422(b), contending, among other things, it was unconstitutionally vague under the Due Process Clause of the Fifth Amendment and that it violated his First Amendment rights under the U.S. Constitution because it criminalizes speech not conduct. Dhingra's claims were rejected and his conviction and sentence affirmed. *See* United *States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004). Moreover, after his conviction, Dhingra filed a motion with the Court claiming that the Victim was possibly an FBI agent. (Dkt. No. 106, at 2.)

For more than 15 years, Dhingra has failed to diligently investigate the groundless allegations in his Petition.

## II.   ARGUMENT

### A.   Dhingra's petition fails to meet the stringent standard for coram nobis relief.

The extraordinary writ of *error coram nobis is available* to provide a remedy in an extremely limited category of criminal proceedings where "no other relief is available and sound reasons exist for failure to seek appropriate earlier relief." *United States v. Martinez*, 90 F. Supp. 2d 1072, 1075 (D. Haw. 2000), *aff'd,* 17 Fed. Appx. 517 (9th Cir. 2001) (citing *United States v. Morgan*, 346 U.S. 502 (1954)). "The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). The "writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Id*. "Where the errors are of 'the most fundamental character,/ such that the proceeding itself is rendered "invalid," the writ of coram nobis permits a court to vacate its judgments." *Estate of McKinney*, 71 F.3d 781 (9th Cir. 1995). "It is presumed that the proceedings leading to a conviction were correct," *Morgan*, 346 U.S. at 512, and the burden rests on the

petitioner to demonstrate that the alleged error is so fundamental as to result in a complete miscarriage of justice. *Id.*; *Klein v. United States,* 880 F.2d 250, 253 (10th Cir. 1989).

Coram nobis relief, however, "is not available to litigate issues already litigated." *Martinez,* 90 F. Supp. 2d at 1075 (citing *Klein*, 880 F.2d 250, 254 n. 1). Rather, "it is reserved for claims which have yet to receive their first disposition," and "[c]laims that could have been raised by direct appeal are outside the scope of the writ." *Martinez*, 90 F. Supp. 2d at 1075 (citing *United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988) and *United States v. Mayer*, 235 U.S. 55, 69 (1914)). The writ is available only to "correct errors that result in a complete miscarriage of justice." *United States v. Williams*, 806 F.2d 216, 222 (10th Cir. 1986) (quoting *Korematsu v. United States,* 584 F.Supp. 1406, 1419 (N.D. Cal. 1984)).

The Ninth Circuit has held that to qualify *for coram nobis relief*, the petitioner must satisfy each of the following four requirements: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character. *Estate of McKinney*, 71 F.3d 779, 781-782 (9th Cir. 1995)); *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987); *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005). Because these requirements are conjunctive, a petitioner's failure to satisfy any one of them is fatal. *See Matus-Leva* v. *United States,* 287 F.3d 758, 760 (9th Cir. 2002).

While the United States concedes that Dhingra is no longer in custody, and thus, he has satisfied the first requirement that the more traditional remedies under the writ of habeas corpus or 28 U.S.C. § 2255 are unavailable, *see Kwan*, 407 F.3d at 1012 (when petitioner is "no longer in custody, this first requirement is satisfied"), Dhingra did not and cannot satisfy the second and fourth elements required for coram nobis relief. Thus, this Court should deny his petition.

1. <u>Dhingra has not stated valid reasons for not attacking his conviction earlier.</u>

In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier. *Morgan*, 346 U.S. at 512; *Kwan,* 407 F.3d at 1012; *Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983), *cert. denied*, 463 U.S. 1212 (1983). A petitioner must exercise due diligence

US' RESPONSE TO PETITION
01-cr-40411-SBA					6

in seeking *coram nobis* relief. *See Hirabayashi*, 828 F.2d at 604-605 (petitioner must show valid reasons for not attacking conviction earlier). Courts have identified several grounds as valid reasons that justify delay, including a recent and fully retroactive change in the law, *see United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989), and the discovery of new evidence which the petitioner could not have located earlier by due diligence, *see Hirabayashi*, 828 F.2d at 605 (previously suppressed government report revealing racially-based grounds for wartime measures taken against Japanese-Americans during World War II). By contrast, a delay is not justified if the petitioner was aware of a potential ground for relief earlier, but chose not to pursue it. *See Maghe*, 710 F.2d at 503-04 (desire to avoid recently arisen collateral consequences of 25 year-old conviction was not valid reason for delay). It is well-settled that claims that could have been raised by direct appeal are outside the scope of the writ. *See Mayer*, 235 U.S. at 69; *Keane*, 852 F.2d at 202; *Martinez*, 90 F. Supp. 2d at 1075.

In this case, Dhingra has submitted various arguments, each of which he claimed in 2003 or earlier. The primary arguments Dhingra advances are: (1) that his minor victim was actually an adult when he engaged in sexual activity with her in July 2000; and (2) that his victim and FBI Agent Esposito, presented false evidence at trial regarding the age of his victim and that the FBI's role with the victim prior to July 10, 2014. (Dkt. No. 154.) Even if these allegations are taken as true, Dhingra claimed his victim was an FBI agent in 2003 and has not been diligent in pursuing that claim as the Court notes in its Order regarding Dhingra's first petition (see Exhibit 2.) *See* also *United States v. Riedl*, 496 F.3d 1003, 1007 (9th Cir. 2007) (coram nobis relief is unavailable if the petitioner "did not exercise due diligence"); *Hirabayashi*, 828 F.2d at 594 (discovery of new evidence constitutes a valid reason for delay if the petition could not have discovered the evidence earlier); *see also Martinez*, 90 F. Supp. 2d 1076, aff'd 17 F. App'x 517 (9th Cir. 2001) ("delay is not justified if the petitioner was aware of a potential ground for relief earlier, but did not choose to pursue it"). The same is true for Dhingra's claim that his victim was not a minor. According to his declaration, during trial, his attorney showed him a birth certificate of his victim that showed she was a minor, but Dhingra continued to believe she was an adult. (Dkt. No. 154, p. 6, ¶¶ 17-18.) For more than 15 years he failed to diligently pursue any of these claims.

Aside from his two primary claims, Dhingra also claims that he twice rejected his victim by no going to meet his victim. Even if true, this information appears to have been used at trial and the jury nonetheless convicted Dhingra given the mountain of evidence against him.  In any event, he surely was aware of this information and either presented it to the jury or failed to and is only raising it now nearly more than15 years later.

He also claims that because he was not charged with California Penal Code § 288(c)(1), this is somehow dispositive. Surely he knew by 2003 that he was not charged with that California crime. He has not raised this issue.  Likely because even if he did, the decision to charge by another sovereign is not an element of 18 U.S.C. § 2422(b) and is not determinative.  Section 2422(b) requires only that the sexual activity be sexual activity "for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b).

Dhingra could have raised any of the claims in his petition years ago. But he failed to do so. *See Klein*, 880 F.2d at 254 (petition properly denied where petitioner delayed seeking coram nobis relief for seven years without explanation, delay caused prejudice to government because key witnesses died, and petition raised claims that had already been litigated).  In light of Dhingra's failure to present any valid reason to justify his failure to attack his conviction earlier, this Court should deny the Petition on this ground alone.

> 2. <u>Dhingra has not demonstrated the existence of error of a "fundamental character," or indeed, any error.</u>

To hide his lack of diligence in pursuing his claims, Dhingra asserts that the evidence he now possesses is newly discovered and that it shows an error of a fundamental character. The Supreme Court in *Morgan* stated that the power to vacate judgments for errors of fact existed, that is, the proceeding itself was irregular and invalid. *Morgan*, 346 U.S. at 509 n. 15, *quoting* 235 U.S. at 69. No such situation exists here.

Dhingra went to trial, was represented by counsel at trial, and filed an appeal.  He was convicted at trial and his conviction was affirmed by the Ninth Circuit.  He offers no credible support for his claims that the FBI and his victim worked together to entrap him or persuade him into using the internet to induce a minor to engage in sexual activity with him and then misrepresented

the truth the Court and jury. The documents Dhingra claim support the FBI and victim connection are completely contradict the trial evidence and require extraordinary speculation and defy logic. The facts that were established at trial were that on July 10, 2000, Dhingra met the victim and engaged in sexual activity with her after engaging in numerous IM chats with the victim. Subsequently, the victim and a close friend reported the incident to law enforcement who, on July 14, 2000, contacted the FBI. The trial evidence shows the FBI had no involvement with the victim prior to that date. Dhingra's evidence to the contrary consists of a short bio that purportedly belongs to Agent Esposito that includes a statement that he was in charge of an FBI Cyber Squad prior to 2013. He next points to a copy of a document in which his victim recounts the assault she suffered at his hands and that she now is a mental health counselor. Based on that information, he leaps to the conclusion that his victim worked for the FBI and that he was entrapped or framed into committing this crime. The claim is illogical and unpersuasive. There is no evidence that his victim was not a minor on July 10, 2000, and no evidence the FBI and victim attempted to entrap or persuade him to engage in sexual activity with a minor. The significance of the Marshal's Witness Security Program appears to be included in Dhingra's argument because he believes it was the Witness Security Program changed his victim's identity. Again he offers no credible support for this.

Nothing Dhingra has presented calls into question the evidence introduced at trial and in no way indicates that Dhingra has suffered a miscarriage of justice. His petition should be denied as he cannot satisfy his high burden to obtain this extraordinary remedy.

### III. CONCLUSION

For the reasons set forth in the foregoing motion, the United States respectfully requests that the Court find that Defendant has failed to meet the high standard for obtaining a Writ of Error Coram Nobis and deny his petition.

DAVID L. ANDERSON  
United States Attorney

Dated: May 10, 2019.

*s/ Jose A. Olivera*  
JOSE A. OLIVERA  
Assistant United States Attorneys  
Attorneys for the United States