UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>RAKESH DHINGRA,<br><br>  Defendant. | Case No: CR 01-40144 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS AND MOTION FOR SUBPOENA OF DOCUMENTS**<br><br>Dkt. 140, 154 |

Defendant Rakesh Dhingra ("Dhingra" or "Petitioner") brings the instant petition for writ of error coram nobis seeking to overturn his conviction under 18 U.S.C. § 2422(b). In connection with the petition, he also brings a motion for subpoena of documents. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES the petition and the motion, for the reasons stated below. The Court finds this matter suitable for resolution without a hearing. See 28 U.S.C. § 2255(b); United States v. Taylor, 648 F.2d 565, 573 & n.25 (9th Cir. 1981) (procedural rules applicable to habeas corpus petitions apply to coram nobis petitions).

## I. BACKGROUND

### A. FACTUAL BACKGROUND[1]

In July 2000, Dhingra, who was then 40 years old, contacted a minor girl using the Internet-based America Online ("AOL") Instant Messenger ("IM") service. He represented to the girl that he was 27 years old. The girl stated on multiple occasions that she was only 14 years old, and Dhingra repeatedly acknowledged her age. Over several days, Dhingra

---

[1] The facts are taken from the Ninth Circuit decision, United States v. Dhingra, 371 F.3d 557 (9th Cir. 2004), as well as the Reporter's Transcript ("R.T.") of proceedings at trial. Given the parties' familiarity with the facts, only a brief overview is provided.

and the girl engaged in extensive IM conversations revolving around sexual topics. As the conversations progressed, they discussed in increasingly explicit detail the sex acts they planned to perform on each other when they met.

Eventually, Dhingra and the girl arranged to meet at a local community college on July 10, 2000. During that in-person encounter, Dhingra fondled the girl beneath her clothing and placed her hand on his penis. The two then proceeded to his automobile, where they engaged in further sexual activity. Afterward, the girl reported the incident to a teacher, and then, to local law enforcement officials.

Local law enforcement officials—including Thomas Sharp, Police Detective for the Contra Costa Community College District—arrested Dhingra after covertly arranging a second meeting between him and the girl. On July 14, 2000, Detective Sharp contacted the Federal Bureau of Investigations ("FBI") and specifically Agent Charles Esposito to further investigate the offense. Agent Esposito interviewed both Dhingra and the girl, conducted forensic examinations of their computers, and subpoenaed AOL for Dhingra's account records. Among other things, the FBI recovered many of the IM messages and emails exchanged between Dhingra and the girl.

### B. PROCEDURAL BACKGROUND

On August 30, 2001, the United States obtained an indictment against Dhingra for Enticement of Minor to Engage in Prohibited Sexual Conduct, in violation of 18 U.S.C. § 2422(b).[2] Dkt. 1. It alleged that Dhingra enticed a minor to engage in lewd or lascivious conduct, as would constitute a violation of California Penal Code § 288(c)(1).[3] Id. A jury

---

[2] Section 2422(b) provides: "Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both."

[3] California Penal Code § 288(c)(1) provides: "A person who commits [any lewd or lascivious act] with the intent [of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child], and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year."

convicted Dhingra of that offense on September 20, 2002. Dkt. 72. On December 17, 2002, the Court sentenced him to 24 months in custody and three years of supervised release. Dkt. 86. Dhingra appealed to the Ninth Circuit, which affirmed the conviction and sentence in a published decision. Dhingra, 371 F.3d 557.

In July 2016, Dhingra filed a pro se civil action challenging his conviction. Dhingra v. United States, No. 16-cv-03803-SBA. In a single pleading, he brought both a complaint for damages and a petition for writ of error coram nobis. Pet. for Writ of Error Coram Nobis & Compl. for Damages, Dkt. 1, No. 16-cv-03803. He alleged, as he does here, that the victim of the offense was actually an adult and an undercover FBI agent or informer. Id. He further alleged that his contact with the fictitious minor was part of an FBI cyber squad operation under the leadership of Agent Esposito. Id.

Screening the action under 28 U.S.C. § 1915(e), the Court dismissed the complaint and petition without prejudice. Order Dismissing Compl. & Pet., Dkt. 6, No. 16-cv-03803. As is pertinent here, the Court found that Dhingra was not entitled to coram nobis relief because he failed to justify the 14-year delay in attacking his conviction and had not demonstrated diligence in pursuing his claims. Id. The Court further found that the petition was "devoid of any facts" supporting his assertion that the victim was an adult FBI agent/informer acting as part of a sting operation. Id. Dhingra appealed to the Ninth Circuit, which dismissed the appeal as frivolous. Order, Dkt. 15, No. 16-cv-03803.

Thereafter, Dhingra filed a renewed petition for writ of error coram nobis in this action, Dkt. 129, followed by numerous supplemental briefs and declarations, see Dkt. 130, 131, 133, 138, 139, 143, 146.[4] On February 19, 2019, he also filed a motion for subpoena of documents. Dkt. 140. On April 9, 2019, the Court issued an order directing Dhingra to file an amended petition setting forth any and all issues and arguments he seeks to advance before this Court and setting a briefing schedule for the United States to respond. Dkt. 152.

---

[4] Following the dismissal of Case No. 16-cv-03803-SBA, Dhingra also filed a series of related pro se civil actions seeking to invalidate his criminal conviction. Case Nos. 16-06827-SBA; 18-03600-SBA; 18-06627-SBA. Those actions were also dismissed.

On April 26, 2019, Dhingra filed an Amended Petition for Writ of Error Coram Nobis ("Pet."), Dkt. 154, along with a supporting declaration ("Decl."), Dkt. 154-1, and exhibits, Dkt. 154-2. The United States filed a response to the petition, Dkt. 155, as well as a separate response to the motion for subpoena of documents, Dkt. 156. Dhingra filed separate replies. Dkt. 157, 158. The matter is fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

A writ of error coram nobis is an "extraordinary remedy" authorized under the All Writs Act, 28 U.S.C. § 1651(a). United States v. Morgan, 346 U.S. 502, 506, 511 (1954). It is "of the same general character" as a habeas petition under 28 U.S.C. § 2255. Id. at n.4. However, a coram nobis petition provides a means to collaterally attack a conviction when the petitioner is no longer in custody and thereby foreclosed from seeking habeas relief. Chaidez v. United States, 568 U.S. 342, 345 (2013) (citing Morgan, 346 U.S. at 510-511).

"[T]he writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." Estate of McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995) (quotation marks and citations omitted). "Where the errors are of 'the most fundamental character,' such that the proceeding itself is rendered 'invalid,' the writ of coram nobis permits a court to vacate its judgments." Id. (quoting Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987) (citation omitted).

To qualify for coram nobis relief, a petitioner must show that: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character. United States v. Riedl, 496 F.3d 1003, 1006 (9th Cir. 2007) (citing Hirabayashi, 828 F.2d at 604). These requirements are conjunctive, such that failure to meet any one of them is fatal. Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002). "It is presumed the [underlying] proceedings were correct and the burden rests on the [petitioner] to show otherwise." Morgan, 346 U.S. at 512.

**III.    DISCUSSION**

It is undisputed that Petitioner meets the first element for coram nobis relief, i.e., a more usual remedy is not available because he is not in custody. Although Petitioner does not meaningfully address the third element in his petition, see Pet. at 14, he notes that he has been a sex offender registrant for the last 16 years. Reply at 9. Assuming without deciding that sex offender registration is an adverse consequence sufficient to satisfy the case or controversy requirement, see Chaidez, 568 U.S. at 349 n.5 (identifying sex offender registration as a collateral consequence that may arise from a conviction), Petitioner fails to satisfy the second and fourth elements. Accordingly, he is not entitled to relief.

**A.    Reason for Not Attacking Conviction Sooner**

Coram nobis relief is not available to litigate issues already litigated. Martinez v. United States, 90 F. Supp. 2d 1072, 1075 (D. Haw. 2000), aff'd, 17 F. App'x 517 (9th Cir. 2001) (citing Klein v. United States, 880 F.2d 250, 254 n.1 (10th Cir. 1989)). Nor is it available to address claims that could have been but were not raised on direct appeal. Id.; Riedl, 496 F.3d at 1006. The discovery of new evidence that the petitioner could not reasonably have located earlier may constitute a valid reason for delay. Riedl, 496 F.3d at 1007 (citing Hirabayashi, 828 F.2d at 605). Delay is not justified, however, if the petitioner did not exercise due diligence and/or was aware of a potential ground for relief but chose not to pursue it earlier. Id.; Martinez, 90 F. Supp. 2d at 1076.

Here, Petitioner fails to provide a valid reason for the near 15-year delay in attacking his conviction. The petition is based on purportedly newly discovered evidence regarding: "a) FBI Cyber Squad operations led by Agent Esposito . . . , and b) association of FBI Cyber Squad with [the victim (hereafter "E")]." Pet. at 13; see also Decl. ¶ 7 ("The operations of FBI Cyber Squad and [E] as their decoy field investigator are the recent key discoveries in this case."). Petitioner alleges that he was the target of a sting operation by the FBI Cyber Squad and that E was not a minor, but rather, an adult posing as one. As discussed below, however, the nature of Agent Esposito's work at the FBI is not newly discovered. Nor is this the first time Petitioner has suspected the victim to be an adult.

Agent Esposito's experience investigating child sex crimes on the Internet was known at the time of trial. R.T. at 337-38 (describing his experience investigating sex crimes, including "the use of Internet for child sexual exploitation"). In fact, he specifically testified about conducting undercover operations. R.T. at 338 ("As part of investigations, often what I would do is go online and pose as a 13 or 14 year old girl or boy and do undercover investigations, arresting people who solicited me for sex. I've been involved in approximately about 30 arrests in doing that."). Thus, Petitioner cannot claim ignorance about the FBI's practice, or "*modus operandi*," of using "decoy minor[s]." Reply at 8.

Likewise, Petitioner's suspicion that the victim was an adult affiliate of the FBI—baseless as it may be—was aroused prior to and at the time of trial. In a pretrial interview, Petitioner told Agent Esposito that he "suspected [E] might be a law enforcement officer." R.T. at 407; see also Decl. ¶ 18 ("At the meeting [on July 10, 2000], I determined that [E] was an adult."). He also advised trial counsel that he believed E was an adult. Id. When presented with a copy of E's birth certificate, Petitioner told counsel that he "would not accept these lies." Id. Finally, in October 2003, following his trial and conviction—but while his direct appeal was pending—Petitioner filed a motion in this Court in which he questioned: (1) whether the victim "was in fact or possibly could be an Agent of the FBI, informant of Police and someone hired by a law enforcement in order to engage in a Sting operation"; and (2) whether Agent Esposito "presented false testimon[y] about the age of the minor on the internet due to the sting operation by FBI Agents . . . ." Dkt. 106 at 2. The motion was denied without prejudice. Dkt. 117. Although Petitioner notified this Court of his intent to appeal that order, Dkt. 123, no appeal followed.

Consequently, Petitioner fails to present a valid reason for the lengthy delay in presenting these claims. Although it is apparent that he was aware of the issues raised in the instant petition since at least 2003, he did not exercise due diligence in pursuing the present claims. Indeed, insofar as he was aware of these issues prior to and at the time of his direct appeal, the failure to litigate these claims on direct appeal precludes coram nobis relief. See Riedl, 496 F.3d at 1006.

**1**     **B.     Error of the Most Fundamental Character**

Moreover, even if the Court assumes that the evidence upon which the petition is based could not have been uncovered sooner, Petitioner is not entitled to relief because he fails to show any error of fact, let alone an error of the most fundamental character that renders the proceeding invalid. In short, the petition is frivolous.

**1.     Evidence of a Sting Operation**

At trial, the victim testified regarding her contact with Petitioner, including the fact that she was fourteen years old when they met. R.T. at 465. Detective Sharp and Agent Esposito also testified regarding how they came to be involved in the case. R.T. 328-30, 338-39. Specifically, Detective Sharp responded after the victim reported the incident. He then used the victim's AOL account to arrange a second meeting with and arrest Petitioner. Thereafter, Detective Sharp contacted Agent Esposito for assistance with the investigation.

In the face of that trial evidence, which the jurors clearly found credible, Petitioner offers *no new evidence* at all, only baseless speculation that the FBI conducted a sting operation and that the victim was an adult. This is insufficient to establish error warranting relief. See United States v. Scherer, 673 F.2d 176, 179 (7th Cir. 1982) (the petitioner's purportedly new evidence did not warrant coram nobis relief where he "offer[ed] no new evidence at all, but only new suspicions"); cf. United States v. Taylor, 648 F.2d 565, 573 (9th Cir. 1981) (the petitioner was entitled to a hearing on his petition where his claim of prosecutorial misconduct was "clear, detailed, plausible, and unrebutted by the record").

Petitioner submits more than fifteen exhibits in support of his petition. The only Exhibits even arguably characterized as containing new evidence are B, C, E, and H.[5]

---

[5] Exhibit A contains IM messages and emails exchanged between Petitioner and the victim in or about July 2000. Exhibit D is the brief filed by the United States in Petitioner's direct appeal. Exhibit F is a summary of data the FBI found on Petitioner's computer. Exhibit G is a letter from the Contra Costa County District Attorney's Office stating that a review of their records shows no criminal complaint issued against Petitioner for the incident occurring on or about July 10, 2000. Although the letter is dated February 14, 2018, the fact that Petitioner was not charged in connection with the incident, which occurred almost 19 years ago, is not new. Exhibit J is the indictment issued in this case. Exhibits K through P and R are excerpts from the Reporter's Transcript. Finally, Exhibit I is not evidence, but a flow chart created by Petitioner.

Exhibit B is a notice for the "Copenhagen Cybercrime Conference 2014," at which Agent Esposito spoke. His brief biography states: "Prior to arriving in Copenhagen in August 2013, he was a Unit Chief in the FBI's Cyber Division and prior to that he led a cyber squad in the FBI's San Francisco Field Office." Exhibit C includes: (1) an article from "Counseling Today," wherein E is quoted about a conference she attended in Bangalore, India;[6] (2) a short biography from the American Counseling Association describing E's work as a counselor; and (3) information from the U.S. Marshals Service regarding the Witness Security Program. Exhibit E is a Wikipedia entry for the television show "To Catch a Predator," describing the show's use of decoy minors. Finally, Exhibit H purports to be a series of Twitter messages. Although it contains an incomplete conversation between two unidentified Twitter users, Petitioner asserts that the messages were exchanged between him and someone identifying as E in February 2018.

      Setting aside issues as to the authenticity and admissibility of the foregoing evidence, it fails to raise even a remote inference of wrongdoing on the part of the FBI and/or E. The general information regarding "To Catch a Predator" is immaterial. Petitioner merely likens the FBI's alleged sting operation to the tactics used on that show. Decl. ¶ 16. Likewise, the general information regarding the Witness Security Program is immaterial. Petitioner imagines, without support, that the FBI used the program to change E's identity. Id. ¶ 8. With regard to Agent Esposito, the fact that he led a cyber squad unit in no way supports the inference that he conducted—and lied about conducting—a sting operation *in this case*. Although the cyber squad conducts sting operations, it does not follow that *every* investigation involves such an operation. Rather, consistent with the testimony given at trial, it is more likely that local law enforcement contacted the FBI for its expertise in child sex crimes and computer forensics. See R.T. at 338-39.

---

[6] The quote emphasized by Petitioner concerns E's initial reluctance to go on the trip. She states: "Deciding to make the trip to India was a very challenging decision for me to make personally . . . because I had a traumatic experience when I was 14 years old when a man who was from India sexually assaulted me. In court he used his cultural background as a defense. At a young age I became fearful of Indian culture, believing his words that his actions were considered normal in his country."

Regarding E, the material from the American Counseling Association serves only to show that she pursued a career in counseling. With respect to the "Counseling Today" article, Petitioner makes much of the fact that E allegedly repeated something said by Agent Esposito during the investigation, i.e., that Petitioner used his Indian culture as a defense for his criminal conduct. Pet. at 10. There is no evidence Agent Esposito made such a statement. Even if he had, however, the fact that E stated something similar does not show that she was "coached," id., let alone that she is an FBI affiliate. Indeed, although Petitioner claims he did not use his Indian culture as a defense, he *continues* to invoke his background to explain his conduct. Decl. ¶ 15 ("Being born and brought up in India, I was not familiar, or 'knowing' about children practicing extreme vulgar sexual language on cyberspace[.]"). Thus, E could have formed the opinion based on her own observations or simply adopted an opinion expressed by Agent Esposito during the investigation.[7]

The purported Twitter exchange between Petitioner and E also proves ineffective. According to Petitioner, "[s]ometime during 2015-2016," he discovered that E created a GoFundMe account to benefit survivors of sexual violence. Decl. ¶ 50. Petitioner asserts that E terminated the account after he posted a comment informing the public of E's affiliation with the FBI. Id. ¶ 51. "In February 2018, someone identifying as [E] . . . initiated a conversation with [Petitioner] on [Twitter]." Id. ¶ 52.[8] During the Twitter

---

[7] For the first time in his reply brief, Petitioner claims that the nature of E's counseling work shows that she continues to serve as an undercover operative for the FBI. Reply at 6. Generally, parties may not raise new arguments in reply. United States v. Cox, 7 F.3d 1458, 1463 (9th Cir. 1993). In any event, these claims are fantastical on their face. See, e.g., Reply at 6 (asserting that E works with "Counselors Without Borders," an organization that goes to "places that are either crime or disaster relief areas, and is usually infiltrated with investigators, for first hand investigation and surveillance").

[8] Although Petitioner asserts that E initiated the conversation, the messages show the opposite. As set forth by Petitioner, the exchange was as follows:
[Petitioner]: you were in Gofundme?
[E]: Yes I was starting a nonprofit for survivors of sexual violence.
[Petitioner]: and then deleted it
[E]: Because you found me and commented
[Petitioner]: so? [¶] I said that you were FBI [¶] is that reason to delete it?
[E]: I didn't want you spreading lies when I was trying to do good by helping others

- 9 -

exchange, E acknowledged that she closed the GoFundMe account after Petitioner found it and commented. Id. Petitioner claims that "[t]he immediate closing of the account points to [E's] guilt for using her changed identity and manufactured or fake story . . . for monetary gains after presenting false information to this Court . . . and providing her services to the FBI Cyber Squad." Mot. for Subpoena of Docs. at 6, Dkt. 140. The notion that E acted out of "guilt" because she is an FBI affiliate is not evidence of the fact to be proven, but rather, assumes the fact to be proven. That assumption is not grounded in the evidence. Indeed, the more logical conclusion is that E closed the account to avoid contact with Petitioner and stop him from "spreading lies," as stated in the Twitter exchange.[9]

The remaining evidence is equally unavailing. Petitioner relies upon the following facts, taken from the transcript of proceedings at trial: (1) E did not read her own IM messages, they were recited into evidence by FBI Agent Kelly Shewey; (2) E's AOL account had been closed, preventing the FBI from recovering data associated with the account; and (3) E could not recall certain IM messages that she exchanged with persons other than Petitioner. None of this constitutes new evidence; rather, these matters were known at the time of trial and considered by the jury. Further, insofar as Petitioner relies on these facts to bolster the supposition that E was an adult acting as part of an FBI sting operation, they are wholly uncompelling. First, the manner in which the victim's IM messages were read at trial has no evidentiary significance. Second, as acknowledged by

---

[9] Petitioner moves to issue a subpoena to GoFundMe for records associated with E's account. Dkt. 140. Like habeas petitioners, coram nobis petitioners are not presumptively entitled to discovery. Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999); Shin v. United States, No. 04-00150 SOM, 2016 WL 4385837, at *5 (D. Haw. Aug. 15, 2016) (citing United States v. Balistrieri, 606 F.2d 2016, 221 (9th Cir. 1979)). Rather, leave to conduct discovery may be granted only where "good cause" is shown. Rich, 187 F.3d at 1068; Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)) (good cause is shown "'where specific allegations . . . show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief'"). Where, as here, a petitioner seeks to conduct "[a] fishing expedition[] to investigate mere speculation," or "to explore [his] case in search of its existence," discovery is not warranted. Calderon v. U.S. Dist. Ct., 98 F.3d 1102, 1106 (9th Cir. 1996) (citations omitted); see also Shin, 2016 WL 4385837, at *5. For the reasons discussed above regarding the Twitter and GoFundMe evidence, Petitioner does not show good cause to conduct discovery on E's GoFundMe account.

Petitioner, see Decl. ¶ 42, E's father closed her AOL account, thereby preventing the FBI from issuing a subpoena for account records. There is no evidence of collusion between the FBI and the victim's family to destroy evidence, and any suggestion to the contrary is mere conjecture. Third, the victim's inability to recall certain IM messages does not tend to show that she was an adult acting at the direction of the FBI. Petitioner's speculation that the messages were not sent or were sent by an FBI agent (and not E) is unsupported.

Finally, Petitioner places much emphasis on the fact that the Contra Costa County District Attorney's Office never charged him for a violation of California Penal Code § 288(c)(1) or any other offense arising out of the incident on July 10, 2000. Because he admits that sexual acts occurred, see Pet. at 2; Decl. ¶ 36, he posits that the victim must have been an adult, otherwise the local authorities would have charged him with a crime. This is preposterous. The fact that Contra Costa County never charged Petitioner with an underlying sexual offense is not evidence that no such crime occurred, let alone evidence that the victim must have been an adult. Consequently, Petitioner sets forth no facts demonstrating his entitlement to coram nobis relief.[10]

## 2. Alleged Motive for a Sting Operation

Notably, in addition to finding that the petition is devoid of any facts supporting Petitioner's claims, the Court also finds that there exists a fundamental flaw in his reasoning. Petitioner opines that Agent Esposito contrived this fiction because a conviction could not have been obtained against him otherwise. Specifically, he asserts that "Federal law cannot impose violation or punishment for sexual activity or sexual assault between adults." Reply at 4. Petitioner asserts that Agent Esposito manipulated and fabricated facts

---

[10] Petitioner raises several additional arguments that rehash matters litigated at trial and on appeal. The arguments center around the claim that he lacked the necessary mens rea because he did not knowingly induce a minor. For example, he argues that: (1) he did not know and/or did not believe that E was a minor; (2) he did not induce E, but rather, she induced him; and (3) he had no intent to engage in sexual activity with a minor. The jury considered these matters at trial and found that Petitioner had the necessary mens rea. Absent new evidence to support his claim that the victim and FBI committed perjury by concealing a sting operation—of which there is none—there is no basis for the Court to revisit these issues, which were conclusively determined by the jury's verdict.

(i.e., represented that the victim was a minor) to "conform with [Section] 2422(b)." Id.; see also Pet. at 15 (asserting that Petitioner's prosecution and conviction "was allegedly maliciously achieved for the sole purpose of punishing [him]; not for the gravamen of the offense of the 'act of persuasion' as required in [Section] 2422(b), but for the act of having sexual activity with the FBI Cyber Squad's investigator, [E]"). However, the supposed motivation for the FBI's contrivance is baseless.

Section 2422(b) provides: "Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so," is guilty of a criminal offense. As held by the Ninth Circuit, "'an actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b).'" United States v. Meek, 366 F.3d 705, 717 (9th Cir. 2004) (citation omitted) (affirming conviction under § 2422(b) where an adult police detective posed as a minor in AOL IM conversations with the defendant). Section 2422(b) "imposes criminal liability when the defendant *believes* he is inducing a minor," even if "the object of his inducement is really an adult." Id.

Consequently, the FBI had no reason to concoct a fictitious minor. Even if Petitioner had been conversing with an adult posing as a child, he could have been found guilty under Section 2422(b). As stated above, Petitioner was repeatedly informed of and acknowledged that he was conversing with a minor. Even so, he engaged in explicit sexual conversations with her, discussed the sexual acts he wanted to perform, and arranged to meet in person. This establishes the requisite mens rea, i.e., he "knowingly sought sexual activity, and knowingly sought it with a minor." Meek, 366 F.3d at 718 (holding that the defendant "possessed the guilty mind required by the statute," even if he was "mistaken" in his knowledge that the victim was a minor); id. at 720 (holding that the defendant violated Section 2422(b) where he believed that the person with whom he was conversing was a minor, engaged in extensive sexual dialog including discussions of the sexual acts he would like to perform, and traveled to meet the purported minor).

Petitioner appears to be operating under the mistaken belief that an attempt conviction would have been impossible because he actually met with the victim, who he now believes to have been an adult. This misunderstands both the nature of the offense and the law of attempt. See Meek, 366 F.3d at 720 (holding that the defendant's conduct fell squarely within the definition of criminal attempt as it pertains to Section 2422(b)). The offense of conviction is complete when the enticement occurs. Id. at 718-19 (noting that the criminal conduct is the knowing effort to induce a minor to engage in sexual activity). Thus, the fact that Petitioner later met and engaged in sexual activity with the victim—though potentially constituting yet another criminal offense—does not foreclose a prosecution and conviction for actual or attempted enticement.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Dhingra's motion for subpoena of documents is DENIED.

2. Dhingra's petition for writ of error coram nobis is DENIED.

3. This Order terminates Dockets 140 and 154.

IT IS SO ORDERED.

Dated: July 1, 2019

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge